885 P.2d 112

**Frank CHAVIS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Dimension Cable, Respondent Employer,**

**CIGNA, Respondent Carrier.**

**No. 1 CA–IC 93–0001.**

Court of Appeals of Arizona,
Division 1, Department A.

April 12, 1994.

Review Denied Dec. 20, 1994.

Taylor & Associates by Richard E. Taylor, Roger A. Schwartz, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

Long, Lundmark & Poppe by James B. Long, Phoenix, for respondents employer and carrier.

## OPINION

VOSS, Judge.

Claimant Frank Chavis filed this special action for review of an Arizona Industrial Commission ("Commission") Decision Upon Hearing and Findings and Award ("Award") and Decision Upon Review affirming the Award. In his Award, the Administrative Law Judge ("ALJ") dismissed Claimant's hearing request for unexcused untimeliness. Claimant presents two issues:

(1) Whether the evidence supports the ALJ's finding that Claimant failed to make reasonably diligent efforts to verify representations made by Respondent Carrier ("Pacific") and therefore, by definition, did not justifiably rely on these representations notwithstanding any "nonfeasance" by Pacific; and

(2) Whether Roseberry[1] applies to an average monthly wage calculation supported by the information Pacific obtained, but would be contradicted by information it should have obtained.

Because reasonable evidence supports the ALJ's Award, and Roseberry does not apply, we affirm the Award.

---

1. *Roseberry v. Industrial Comm'n,* 113 Ariz. 66, 546 P.2d 802 (1976).

Claimant worked for Dimension Cable in Bullhead City. Payroll records for the Bullhead City operation were maintained by Dimension Cable's main office in Los Angeles. Claimant earned $7.40 an hour, and he always worked at least forty hours a week. His overtime included scheduled overtime on Saturdays and unscheduled overtime for exigent circumstances. Claimant's amount of overtime varied from pay period to pay period, and his gross wages varied accordingly. Claimant's average monthly income from date of hire to date of injury was approximately $1,600.00.

On May 5, 1990, Claimant injured his knee and back at work. On June 12, 1990, Pacific issued a Notice of Claim Status ("NCS") accepting the claim and indicating that compensation would be based on an average monthly wage of $1,290.45 which was subject to final determination by the Commission. Included with this NCS was a recommended average monthly wage calculation form ("Form 108"). This form indicated Claimant's average monthly earnings with Dimension Cable from April 5, 1990, through May 4, 1990, amounted to $1,272.80 and stated the average monthly wage recommended by Pacific was $1,290.45.

On July 12, 1990, the Commission issued its Notice of Average Monthly Wage ("Notice"), which approved Pacific's recommendation and established that Claimant's average monthly wage was $1,290.45. This Notice provided the standard warning that the Notice would become final after ninety days.[2] Also included with this Notice was a form letter that informed Claimant that the Commission did not independently gather wage data; therefore it requested that Claimant verify the wage data provided by Pacific and apprised Claimant to "[p]ay particular attention to your hourly wage, your total earnings, the period since you most recently received an increase, whether overtime pay and tips were included in your hours worked as well as your earnings prior to your injury."

Claimant did not contact Dimension Cable, Pacific, or the Commission to inquire about his average monthly wage, and he allowed the ninety-day-protest period to expire without filing a Request for Hearing. In February 1992, Claimant retained his current counsel, who was the first to question the accuracy of the average monthly wage determination. On April 3, 1992, Claimant filed an untimely protest to the Commission's Notice. Prior to the scheduled hearing, Pacific raised the affirmative defense that Claimant's protest was untimely and requested the ALJ to limit the hearing to this defense. The ALJ rejected this request and allowed evidence regarding both the untimeliness of Claimant's protest and the merits of the average monthly wage determination.

At the initial hearing, Claimant admitted that he received the Commission's Notice, that he was of sound mind when he received it, and that he did not communicate with Dimension Cable, Pacific, or the Commission verifying their calculations. Claimant testified that he assumed Pacific obtained the correct wage information from the Los Angeles office and "never thought about whether [the Notice was right or wrong]. I mean, that's what they told me. I have no way of knowing how they [calculated it]—I just didn't think about it. I just accepted what they gave me." Claimant also explained that because his wages varied depending on the amount of overtime in each pay period, he would need his payroll records to know the exact amount he earned the thirty-day period prior to his injury. After retaining his present counsel, Claimant requested payroll records from Dimension Cable in Bullhead City, but the local office referred him to the main office in Los Angeles. Both parties ultimately agreed that the average monthly wage recommended by Pacific and accepted by the Commission reflected less wages than actually earned by Claimant.

At the close of the first hearing, Claimant conceded that Pacific did not intentionally mislead him; however Claimant asserted

---

2. The warning states:

NOTICE TO CLAIMANT: If you do not agree with this NOTICE and wish a hearing on the matter, your written Request for Hearing must be received ... within NINETY (90) DAYS after the date of mailing of this NOTICE.... IF NO SUCH APPLICATION IS RECEIVED WITHIN THAT NINETY DAY PERIOD, THIS NOTICE IS FINAL.

that Pacific was grossly negligent in acquiring the wage information included on the Form 108. The ALJ allowed Claimant a further hearing to question Pacific's claims representative who had processed Claimant's claim.

The claims representative could not recall the source of the information reported on the Form 108. Her computer notes indicated that she called Dimension Cable in Bullhead City and was referred to the Los Angeles office. She then called the Los Angeles office. She assumed that somebody in Los Angeles returned her call with the information included on the Form 108. She did not know the identity of the person providing the information, and she had no documentation verifying the accuracy of the wage information.

The claims representative admitted that "[n]obody can find out where that number [for the wages earned thirty days before the injury] came from"; however, she testified that at the time this claim was processed she had no reason to doubt the accuracy of the figure because it was substantially the same as the straight calculation based upon the hourly wage and a forty-hour week. She also explained that unless something looked "wrong," her usual practice was to rely on information that employers provided by phone because obtaining payroll records takes time and they are difficult to interpret.

The claims representative also testified that she generally requested employers to provide information about gross earnings, including overtime. If the gross earnings and the calculation based on the hourly wage for a forty-hour week differed significantly, she would request additional information from the employer to explain the difference; however, she admitted that she did not recall whether she directly asked Dimension Cable regarding Claimant's potential variable earnings or pay increase.

The parties submitted post-hearing memoranda. Claimant argued that the ALJ should excuse the untimely filed hearing request because Claimant had justifiably relied on Pacific's representation regarding his wages in the Form 108. He argued that his reliance was justified in light of his variable wages, the difficulty of getting payroll records from Los Angeles, and Pacific's grossly negligent manner of obtaining Claimant's wage information. Pacific argued that Arizona Revised Statutes Annotated ("A.R.S.") section 23–947(B)(1), as interpreted in *Borquez v. Industrial Commission*, 171 Ariz. 396, 831 P.2d 395 (App.1991), required the ALJ to dismiss the hearing request because it was untimely, and Claimant's reliance on representations by Pacific or the Commission was not justified because he did nothing to verify the accuracy of the Notice.

The ALJ then issued the Award. He concluded that notwithstanding Pacific's failure to exercise reasonable care in obtaining and verifying Claimant's wage information, and contrary to the general remedial intent of the Workers' Compensation Act, A.R.S. section 23–947(B)(1) places the ultimate burden of reasonable diligence on claimants to verify the accuracy of the average monthly wage determination. Claimant's passive acquiescence failed to meet the statutory standard; therefore, the ALJ reluctantly followed the letter of the statute and dismissed the hearing request.

On administrative review, Claimant reiterated the arguments of his post-hearing memorandum, and for the first time, argued that *Roseberry* applied to this case. Pacific's Response denied the applicability of *Roseberry* because "there was no information in the possession of the insurance carrier or the Commission that would have indicated that any other wage computation could or should be made."

The ALJ affirmed the Award without modification. He did not address directly the applicability of *Roseberry*. Claimant then brought this special action.

■  On review, Claimant first asserts that the ALJ misapplied A.R.S. section 23–947(B)(1). We disagree. The ALJ correctly concluded that A.R.S. section 23–947(B)(1) required reasonable diligence by Claimant notwithstanding Pacific's lack of diligence in obtaining and verifying the wage information it provided on the Form 108.

Section 23–947, states in relevant part:

A. A hearing on any question relating to a claim shall not be granted unless ... such request for a hearing is filed within ninety days after the notice sent under the provisions of § 23–1061, subsection F [the Notice of Average Monthly Wage]....

B. As used in this section, "filed" means that the request for hearing is in the possession of the commission. Failure to file with the commission within the required time by a party means that the determination by the commission ... is *final and res judicata to all parties. The industrial commission or any court shall not excuse a late filing unless* any of the following applies:

1. The person to whom the notice is sent does not request a hearing because of *justifiable reliance* on a representation by the commission, employer or carrier. In this paragraph, *"justifiable reliance" means that the person to whom the notice is sent has made reasonably diligent efforts to verify the representation, regardless of whether the representation is made pursuant to statutory or other legal authority.*

A.R.S. § 23–947 (Supp.1993) (emphasis added).

The legislature first amended this statute in 1980 to repudiate the supreme court's expansion of discretion to hear late hearing requests. *Roman v. Arizona Dept. of Economic Sec.,* 130 Ariz. 581, 584, 637 P.2d 1084, 1087 (App.1981). The legislature again amended this statute in 1987 to repudiate the supreme court's broad interpretation of "justifiable reliance" by adding the current definition of justifiable reliance, which requires a claimant to "have made reasonably diligent efforts to verify the representation, regardless of whether the representation is made pursuant to ... legal authority." *Borquez,* 171 Ariz. at 397–98, 831 P.2d at 396–97.

■ The legislature may not have contemplated the possibility of a carrier's failure to use reasonable diligence to obtain and report accurate wage information.[3] The amended statute nevertheless imposes an unconditional duty on claimants to make reasonably diligent efforts to verify the wage information reported on the Form 108. Consequently, notwithstanding the ALJ's finding that Pacific committed "nonfeasance," Claimant justifiably relied on the wage information represented in the Form 108 only if he made reasonably diligent efforts to verify the wage information.

■ Reasonable evidence supports the ALJ's finding that Claimant failed to fulfill his statutory duty of diligence. Claimant admitted that he made no effort to verify the accuracy of the average monthly wage within the time allowed for filing a protest. Although Claimant may not have known the exact amount he earned during the month before his injury because his wages varied and his payroll records were out-of-state, he did know that he consistently worked overtime, including at least some overtime during the month before his injury. Furthermore, Claimant could have looked to his own pay stubs for an indication of his earnings within each pay period. These circumstances support the ALJ's conclusion that a reasonable person would have at least contacted Pacific or the Commission to question whether or not the average monthly wage determination included any overtime pay.

We accordingly agree that the hearing request was unexcused pursuant to A.R.S. section 23–947(B)(1). The remaining question is the applicability of *Roseberry.*

In *Roseberry,* the claimant had back surgery for his industrial injury. His treating doctor released him to perform heavy work, but also reported that the industrial injury was not yet stationary. The carrier relied on this report to issue an NCS terminating temporary compensation without permanent impairment. The claimant failed to request a hearing within the protest period; however, he subsequently filed a petition to reopen. The attempt to have the claimant's claim reopened was denied by the carrier and later the Commission because the petition was not based on a "new, additional or previously

---

3. *But see* A.R.S. § 23–930 and Ariz.Admin.Code R4–13–163 (investigations into bad faith and un-  fair claim processing practices).

undiscovered ... condition...." *Roseberry*, 113 Ariz. at 67, 546 P.2d at 803. On review the supreme court concluded that the Commission had never lost jurisdiction to adjudicate the merits of the claim because the NCS terminating the claim was "void on its face." *Id.* at 68, 546 P.2d at 804.

This court has narrowly interpreted *Roseberry* to apply only if a carrier issues an NCS that is directly contrary to the medical report upon which is based. *Borquez*, 171 Ariz. at 399, 831 P.2d at 398. Here, Claimant urges the court to interpret *Roseberry* expansively to apply to an average monthly wage calculation that would have been contradicted by information Pacific would have obtained if it had diligently acquired and verified wage information from Dimension Cable.

We assume arguendo that *Roseberry* extends to non-medical matters. The case does not essentially concern medical determinations but rather any determination that is contrary to the very information a carrier used to make the determination. If Pacific had received wage information from Dimension Cable that contradicted the information that Pacific reported in the Form 108, *Roseberry* may apply.

We disagree, however, that *Roseberry* extends to determinations supported by information the carrier has obtained, but would be contradicted by information the carrier should have obtained. Actual contradiction is a relatively certain standard—possible contradiction is not. Late protest cases would require hearings to litigate what information carriers should have known. To expand *Roseberry* as Claimant suggests would substantially undermine the certainty of A.R.S. section 23–947.

For the above mentioned reasons, we affirm the award.

GRANT, P.J., and EHRLICH, J., concur.